# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GLANTA LIMITED,

        Plaintiff,

    v.

SOAPY CARE LTD., and SOAPY USA
INC.,

        Defendants.

Civil Action No. 24-00365-RGA

## MEMORANDUM OPINION

Philip A. Rovner, Nicole Kathleen Pedi, POTTER ANDERSON & CORROON, LLP,
Wilmington, DE; Nicola A. Pisano, Regis C. Worley, EVERSHEDS-SUTHERLAND, San
Diego, CA,

    Attorneys for Plaintiff.

James Harry Stone Levine, TROUTMAN PEPPER LOCKE LLP, Wilmington, DE,

    Attorney for Defendants.

January 16, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss Plaintiff's complaint for failure to state a

claim. (D.I. 11). I have reviewed the parties' briefing and Plaintiff's notice of supplemental

authority. (D.I. 12, 13, 16, 18). For the reasons set forth below, Defendants' motion is

GRANTED as to claims 1 and 7 and DENIED without prejudice as all other claims.

## I.    BACKGROUND

Plaintiff Glanta brought this suit against Defendants Soapy Care and Soapy USA

(collectively "Soapy"). Glanta asserts patent infringement of "at least" claims 1 and 7 of U.S.

Patent No. 8,090,155 ("the '155 patent"). (D.I. 1 at 3–4). Soapy moves to dismiss Glanta's

complaint (*Id*.), arguing the asserted claims of the '155 patent are invalid for lack of patentable

subject matter under 35 U.S.C. § 101. (D.I. 12 at 1).

Glanta "develop[s] and market[s] hand washing monitoring technology under the

'SureWash' brand." (D.I. 1 ¶ 1). The USPTO issued the '155 patent in January 2012. (*Id.* ¶ 8;

'155 patent). It appears to have a priority date of 2006. (D.I. 13 at 3). The '155 patent, titled

"Hand Washing Monitoring System," is directed to a system that provides "hygiene training

using cameras to give feedback on hand hygiene technique." (D.I. 1 ¶ 9). Glanta is the assignee

of all right, title, and interest in the '155 patent. (*Id.* ¶ 8).

Soapy devotes roughly four pages of its briefing to its representative claim analysis. (D.I.

12 at 6–8; D.I. 16 at 2–3). Soapy asserts that claim 1, the only independent claim, is

representative because all thirty-seven claims are "directed to the same basic process" and

abstract idea: "analyzing and generating a response to hand washing motion." (D.I. 12 at 6, 7).

Soapy argues that the dependent claims "merely add insignificant limitations," such as "generic

components" and "generic image processing." (*Id.* at 7). Glanta denies that claim 1 is

representative. (D.I. 13 at 8). Glanta argues the dependent claims add "pioneering improvements" that are not "generic." (*Id.*). Glanta argues that the algorithms and programming of the system, specified in some of the dependent claims, allow it to analyze hand washing movements in a more comprehensive way than existed in the prior art at the time. (*Id.* at 8, 10–11; *see* '155 patent at 2:1–5).

"Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)). "The patent challenger who identifies a claim as representative of a group of claims bears the initial burden to make a prima facie showing that a group of claims are substantially similar and linked to the same ineligible concept." *Id.* (internal citation omitted). "Once this occurs, the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.*

Certain limitations present in the dependent claims, such as being "battery powered" (claim 5) or being contained within a "soap dispensing unit" (claim 7), do appear merely to add generic components. ('155 patent at 13:66–67, 14:5–6). But Glanta provides a non-frivolous argument as to why claim 1 should not be treated as representative for all claims and I am not convinced that Soapy met its burden to prove otherwise. Therefore, I will limit analysis to the two clearly-asserted claims: claim 1 and claim 7. Claim 1 is clearly representative of claim 7.

Claim 1 states:

> 1. A hand washing monitoring system comprising a camera, a processor, the processor being adapted to receive from the camera images of hand washing activity, characterized in that, the processor is adapted to:
>> analyse mutual motion of hands to determine if the hands mutually move in desired poses, and if so, the durations of the patterns; and
>> generate a hand washing quality indication according to the analysis.

('155 patent at 13:48–56).

Claim 7 states:

> 7. A soap dispensing unit comprising a monitoring system as claimed in claim 1.

('155 patent at 14:5–6).

## II.    LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules require a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules allow the accused party to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P 12(b)(6). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

4

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Patent-Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). "[P]atent eligibility can be determined at the 12(b)(6) stage without the aid of expert testimony." *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

5

The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012) (internal citation omitted). "Method[s] of organizing human activity," "analyzing information by steps people go through in their minds," and mathematical algorithms have been recognized as categories of abstract ideas. *Alice*, 573 U.S. at 220, 222; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The framework is a two-step process. *Id.*

At step one, I must decide whether the claims are drawn to a patent-ineligible concept. *Id.* I determine whether the "focus" of the claims is "a specific means or method that improves the relevant technology" or rather is "directed to a result or effect that itself is the abstract idea." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (internal citation omitted) (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)); *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO*, 837 F.3d at 1312 (quoting *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). If the claims are not directed to, or focused on, a patent-ineligible concept, then the inquiry ends, and the claims are not ineligible under § 101. *Id.* If the claims are directed to a patent-ineligible concept, I proceed to step two. *Id.*

At step two, I "scrutinize the claim elements more microscopically[.]" *Elec. Power Grp.*, 830 F.3d at 1354. I must look to "the elements of [the] claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up).

Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski*, 561 U.S. at 610). Thus, neither "the mere recitation of a generic computer" nor "vague, functional descriptions of server components" can render an abstract idea into a patentable invention. *Id.* at 223; *TLI Commc'ns LLC v. AV Auto., L.L.C. (In re TLI Commc'ns LLC Pat. Litig.)*, 823 F.3d 607, 615 (Fed. Cir. 2016). Likewise, limiting the invention to a particular field does not suffice to confer patentability. *See Elec. Power Grp.*, 830 F.3d at 1354 (finding that limiting claims to the "particular technological environment of power-grid monitoring" was insufficient alone to render abstract idea patentable).

## III. DISCUSSION

### A. *Alice* Step One

Soapy asserts that the '155 patent is a "quintessential 'do it on a computer' patent." (D.I. 12 at 11 (quoting *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019))). Soapy argues that claim 1 is "directed to an unpatentable abstract idea because [it] claim[s] nothing more than the fundamental practice of analyzing and generating a response to hand washing motion." (*Id.* at 8). Further, Soapy argues that claim 1 recites analyzing hand

7

washing motions without providing any particular way that this analysis should take place. (*Id.* at 12).

      Glanta argues that the focus of the claims is on an "improved and inventive system" for hand washing "programmed in ways not previously suggested in the prior art." (D.I. 13 at 10). Glanta contends that the patent provides "specific algorithms and models" to accomplish the task of hand washing monitoring with precision that exceeds the capabilities of human beings. (*Id.* at 12, 19). Particularly, the algorithms not only monitor prescribed poses during hand washing, but also "ensure that the poses are maintained for prescribed durations." (*Id.* at 5). Glanta argues that claim 1 should be read in light of the specification, which discloses specific "algorithmic and physical improvements in machine vision" previously unknown in the field of hand washing technology. (*Id.* at 13–15). Glanta also notes that the conventionality of patent claims should be assessed as of the time of filing. (*Id.* at 13).

      I agree with Soapy that claim 1 is directed to an abstract idea.

      The claim at issue in *McRO*, cited by Glanta (*Id.* at 16), provides an illustrative contrast to claim 1 of the '155 patent. The claim in *McRO* provided a method for "automatically animating lip synchronization and facial expression of three-dimensional characters" using algorithmic rules dealing with "morph weight" and phoneme sequences. *McRO*, 837 F.3d at 1307–08. Though not claimed with specificity, "the claimed rules…[were] limited to rules with certain common characteristics, i.e., a genus." *Id.* at 1313. Previously, human animators had performed this synchronization manually and subjectively. *Id.* at 1307.

      At step one, the Federal Circuit in *McRO* found that the claim at issue was not directed to an abstract idea because it used a "particular type" of "limited rules in a process specifically designed to achieve an improved technological result in conventional industry practice." *Id.* at

1314, 1316. The rules did not merely "use a computer as a tool to automate conventional activity" because the human animators used a different process than the one that was claimed. *Id.* at 1314. Thus, the claims focused on a patentable "means or method of producing a certain result, or effect, and not . . . the result or effect produced." *Id.* at 1314 (citing *Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981)). Notably, the limitation to certain types of rules in the *McRO* claim was "apparent on the face of the claims." *Id.* at 1311.

In contrast, claim 1 of the '155 patent claims a system comprising a "camera" and a "processor" configured to (1) "analyse" the motion of hands into various poses and the duration of those poses, and (2) "generate" a result. ('155 patent at 48–56). Looking at claim 1 as a whole, the system focuses on the act of washing one's hands and analyzing conformance with a standard—in other words, the system claims the abstract ideas of "organizing human activity," and "analyzing information by steps people go through in their minds" as implemented on a computer. *Alice*, 573 U.S. at 220, 222; *Elec. Power Grp.*, 830 F.3d at 1354. Human beings attempting to wash their hands according to a standard would likewise "analyse" how well they struck certain poses and how long those poses were held. Performing this activity using a "camera" and a "processor" rather than eyes and a brain does not make it patentable. *See In re TLI Commc'ns*, 823 F.3d at 615.

Further, unlike *McRO*, nothing in the language of claim 1 limits the system to particular algorithms or types of algorithms that improve the functioning of the technology. *See Contour IP Holding*, 113 F.4th at 1379 (citing *McRO*, 837 F.3d at 1314). It is true that at step one the claims must be read in light of the specification. *Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020); *Elec. Power Grp.*, 830 F.3d at 1355. The specification of the '155 patent includes more detail than the claims. But details in the specification are meant to

9

provide context for the claims and do not factor into the patentability analysis if those details are not also claimed. *See AI Visualize, Inc. v. Nuance Commc'ns Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024). "Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

The claims found to be directed to an abstract idea in *Electric Power Group* are more analogous to claim 1 of the '155 patent. The representative claim in *Electric Power Group* disclosed a method of "detecting and analyzing events in real-time" from multiple data streams on an interconnected electric power grid, displaying results of that analysis, and "deriving a composite indicator of reliability that is an indicator of power grid vulnerability." *Elec. Power Grp.*, 830 F.3d at 1351–52. In that case, the Federal Circuit described the claims as focused on a "combination of . . . abstract-idea processes." *Id.* at 1354. Specifically, the claims disclosed "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* Unlike *Enfish*, in which there was a claimed advance that improved computer functionality, the focus of the claims in *Electric Power Group* was on "independently abstract ideas that use computers as tools." *Id.* (citing *Enfish*, 822 F.3d at 1335–36).

Like claim 1 of the '155 patent, the claims in *Electric Power Group* did not "require a new source or type of information, or new techniques for analyzing it" and new algorithms were not claimed. *Id.* at 1355. Also similar to claim 1, nothing in the *Electric Power Group* claims "require[d] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Id.*

Glanta directed my attention to *Contour IP* in its notice of supplemental authority. (D.I. 18). This case further supports a finding that claim 1 is directed to unpatentable subject matter. The claims in *Contour IP* were directed to a portable digital camera that simultaneously generated both high quality and low quality video recordings so that the low quality video could be streamed to a remote device and reviewed. *Contour IP*, 113 F.4th at 1376. The claim language in the *Contour IP* patent disclosed a processor configured to generate two data streams of differing quality while recording. *Id.*

The Federal Circuit determined that, in order to effect parallel data stream processing, this limitation "require[d] specific, technological means . . .that in turn provide[d] technological improvement to the real time viewing capabilities . . . on a remote device." *Id.* at 1379. Simply employing conventional components, such as a processor and a camera, did not alone mean that the claim was directed to an abstract idea. *Id.* at 1380. Rather, the claim language in *Contour IP* caused the conventional camera component to "operate differently than it otherwise could" through the disclosure of recording multiple video streams in parallel and wirelessly sending the lower quality stream to a remote device. *Id.*

Claim 1 of the '155 patent provides no similar identifiable improvement in the functioning of conventional components or otherwise changes how they usually operate. Instead, it "abstractly covers results without regard to a specific process or machinery for achieving those results." *Id.* at 1379 (cleaned up) (citing *McRO*, 837 F.3d at 1314). Therefore, I find that, when viewed as a whole, the system in claim 1 is directed to the abstract idea of observing and analyzing a user's hand washing motions and displaying the results of that analysis.

11

**B. *Alice* Step Two**

At step two, I examine the claim limitations "both individually and as an ordered combination" to determine whether the claims disclose an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 217, 221 (cleaned up). If a claim is directed to an abstract idea at step one, to be patentable at step two the claim "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal citation omitted).

Much of the analysis at step one carries over to step two. As the Federal Circuit stated in *In re Killian*:

> We have explained that claims for methods that improve an existing technological process include an inventive concept at step two. And claims that recite a specific, discrete implementation of the abstract idea rather than preempting all ways of achieving an abstract idea using a computer may include an inventive concept. But claims to an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way do not pass muster at step two. Neither attempting to limit the use of the idea to a particular technological environment nor a wholly generic computer implementation is sufficient.

45 F.4th 1373, 1382–83 (Fed. Cir. 2022) (cleaned up) (internal citations omitted).

Glanta points to the inventiveness of the algorithms disclosed in the specification but declines to discuss *Alice* step two in its briefing or identify an "inventive step" present in the claims themselves. (D.I. 13 at 17–18). Glanta also asserts that the system performs a task that "would exceed the talents of even the most observant human" because fatigue causes a decline in human accuracy. (*Id.* at 19).

As discussed above regarding step 1, despite the contents of the specification, claim 1 discloses only generic computer components performing in conventional ways. Claim 1 contains

neither a specific technical solution nor a discrete implementation of the abstract idea of observing hand washing, analyzing the hand washing, and generating a result.

Glanta states that algorithms disclosed in the specification provide an improvement on existing technology in that they not only monitor a user's poses, but also "ensure that the poses are maintained for prescribed durations." (*Id.* at 5). However, claim 1 merely says, "analyse mutual motion of hands to determine if the hands mutually move in desired poses, and if so, the durations of the patterns." ('155 patent at 13:52–54). As disclosed in claim 1, the patent would seem to preempt all computer implementation of an activity that has been performed by human beings since at least Shakespeare's time.[1]

Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222 (alteration in original) (quoting *Bilski*, 561 U.S. at 610). Simply housing the system of claim 1 inside a "soap dispensing unit" does not impart claim 7 with an "inventive concept." (*see* '155 patent at 14:5–6).

Therefore, applying the *Alice* two-step framework, I find that claims 1 and 7 of the '155 patent are (1) directed to an abstract idea; and (2) fail to recite an inventive concept that would transform them into patentable applications of that idea. *Alice*, 573 U.S. 208, 217–18. Claims 1 and 7 are accordingly directed to unpatentable subject matter under § 101. They are the only clearly-asserted claims. Therefore, Glanta's complaint (D.I. 1) is **DISMISSED** with prejudice as to them, but with leave to amend as to any of the other claims in the asserted patent.

---

[1] An observer of Lady Macbeth noted: "It is an accustomed action with her, to seem thus washing her hands. I have known her continue in this a quarter of an hour." WILLIAM SHAKESPEARE, MACBETH act 5, scene 1, l. 30–32.

## IV.   CONCLUSION

An appropriate order will issue.